DUCTILE IRON SOCIETY, INC., PLAINTIFF, *v.* GRAY IRON FOUNDERS'
SOCIETY, INC., DEFENDANT.

Common Pleas Court, Cuyahoga County.

No. 801732.   Decided September 17, 1964.

*Messrs. Terrell, Williams & Salim,* for plaintiff.
*Messrs. Jones, Day, Cockley & Reavis,* for defendant.
*Mr. Victor DeMarco* and *Mr. Raymond J. Durn,* of counsel.

LYBARGER, J.   In this action the plaintiff seeks to enjoin the defendant from using the word ''ductile'' in its proposed new name on the ground that plaintiff has a proprietary right to use the word in conjunction with the word ''iron,'' and that if defendant adds ''ductile'' to its title as a trade association it will cause confusion in the iron industry and result in unfair competition.

The essential facts are as follows.   Both parties to the suit are trade associations seeking to promote the interests and help solve the problems of the iron foundry industry.   The defendant came into being in 1928 and was incorporated as GRAY IRON FOUNDERS' SOCIETY, INC. in 1935.   At that time its purpose was to deal primarily with those making gray iron. (Plaintiff's Ex. 2.)   It did not concern itself with malleable iron or steel.

In 1949 The International Nickel Co., Inc., developed a new process of treating iron by changing the alloy content thereof. This introduced nodular graphite into gray iron, instead of normal flake graphite, with the result that such iron was much more ductile, making for ''increased acceptance of the casting process with a greater demand for all cast components.''   (De-

fendant's Ex. A.)   Iron so treated became known as nodular, or more generally as ductile iron.

The defendant association at once included within its membership makers of ductile iron and started disseminating information about the new process and has continued to do so in an increasing degree since 1949.   (Defendant's Exs. A, B, C, D, F, G, H, I, etc.)

The defendant has between 280 and 290 members of whom some 90 are manufacturers of ductile iron.   Since 1961 it has had a Ductile Iron Section which has been holding annual meetings.

In 1958 the plaintiff was incorporated as THE DUCTILE IRON SOCIETY, INC. "to promote the interests of the ductile iron industry" (Plaintiff's Ex. 1), and for the past six years it has been so doing by holding meetings, distributing learned papers relative to ductile iron (Plaintiff's Ex. 13), and serving its members whose primary if not exclusive concern is ductile iron.   The plaintiff currently has a membership of 68 persons representing 59 companies or institutions (Plaintiff's Ex. 16).

Both plaintiff and defendant have contact not with the general public but with persons interested in and foundries connected with the iron industry.

In the fall of 1963 a group within the society initiated a movement to bring about a change of name of defendant to GRAY AND DUCTILE IRON SOCIETY, INC.   The defendant has taken action to effectuate this and has set October 1, 1964, as the date when the change of name is to go into use. This change the plaintiff seeks to enjoin.

The issues here presented are: (1) Does the plaintiff have a proprietary interest in the word "ductile" when used in the combination "Ductile Iron" in its name?   (2) Or is the word "ductile" a generic term descriptive of the scope of one of the defendant's present purposes?   (3) Will adoption of the present name by the defendant cause confusion and result in unfair competition which this court should restrain?

Turning to a consideration of the law applicable to the case, the Court notes at the outset that the parties herein are not dealing with the public in general and are not marketing any product.   The prospective and active membership of both societies is decidedly specialized and limited to persons or firms

interested in either or both of two branches of the iron industry —gray iron and ductile iron.

"Ductile" is an adjective. It is defined in Webster's New International Dictionary thus: "Capable of being permanently drawn out or hammered thin;—said especially of metals, capable of being moulded or worked; specifically, capable of being drawn out into wire or thread." As used by the iron industry it indicates an iron made stronger than gray iron, and by reason of its contents having many of the qualities of steel. The process of making ductile steel (iron) is patented by The International Nickel Co., Inc., and its manufacture is licensed by that company.

"A tradename is the name, title, or designation under which a person, partnership, corporation, firm, association, society ... or other organization is operating." (52 Ohio Jurisprudence [2d], 344.) It is descriptive of the one bearing it and involves the individuality of the bearer for protection in business, for avoidance of confusion and "for securing the advantage of a good reputation." (Same pg. 346.) Under certain conditions one may acquire a property right in a tradename.

However, it is the law that common, descriptive adjectives are common property and by incorporating such words in a name one cannot acquire a proprietary right to use them to the exclusion of others.

In 87 C. J. S. Section 33, pg. 267, the law is summarized thus:

"No word or combination of words may be exclusively appropriated if it is merely descriptive of the particular business, or of the quality, style, character, grade or class of the goods to which it applies."

"Ductile" is a generic term descriptive, in the iron industry, of a product, its ingredients and its quality. As Judge Danaceau of this court said in *House of Beauty, Inc.*, v. *Lukas* (1959), 81 Ohio Law Abs., 170, at pg. 171:

"Words of common use are regarded as common property, public juris, and may be used by others in combination with other descriptive words, provided they are not so used . . . as to render it probable that they would mislead persons possessing ordinary powers of perception."

The court concludes that the plaintiff has not acquired an

exclusive right to use the word "ductile" in its name. It did not invent the word. The term may be used by others so long as its use does not result in unfair competition.

Now unfair competition does not necessarily involve the question of the exclusive right of another to the use of the name. (52 Ohio Jurisprudence [2d], 378.) Whether or not similarity between two tradenames is sufficient to constitute unfair competition is a question of fact to be determined by its own attending circumstances (87 C. J. S. p. 297.)

As is said in 52 Ohio Jurisprudence (2d), pg. 378:

"Unfair competition contains an element of fraud, misrepresentation, or other recognized unethical conduct. The court seeks to prevent fraud upon the public and upon the complainant, the latter having a property right in his trade which the courts will protect."

Plaintiff contends that the change of name by the defendant will probably lead to confusion, competition for membership, repetition of effort, and a loss of members by the plaintiff, all spelling "unfair competition." Plaintiff cites *Cleveland Opera Co.* v. *The Cleveland Civic Opera Asso.* (1926), 22 Ohio App., 400. At pg. 404 the court said:

"We must keep in mind, however, that while there is no monopoly in the use of geographical and descriptive words, such as the word 'Cleveland' and the word 'Opera,' yet these words are banned under the authorities if when used in connection with the other words constituting the name they result in apparent or obvious confusion, or by inference tend in that direction to such extent that there is a probability that by reason of confusion unfair competition may be the result—in other words, unfair competition arise as the child of confusion."

It should be noted in the above case that both parties were dealing with the general public. There the possibility of confusion is hardly comparable with the facts in the instant case where the parties are in a highly specialized field and, as the evidence indicates, are in touch with persons technically trained in one particular branch of the iron industry.

From a review of the evidence the court is not convinced that appreciable confusion will result from defendant's change of name. There are obvious differences in plaintiff's name and defendant's new name. The societies use distinctive emblems,

The court is not satisfied that the impression will be created either that the plaintiff is no longer representing those in the ductile iron industry or that the two societies have at this time merged identity. Obviously the plaintiff does not have the exclusive right to represent the ductile iron industry, and one of its witnesses so admitted on the stand. Both plaintiff and defendant, and for that matter many other societies if they so choose, may seek to promote ductile iron and represent and speak for those who are their members.

There is a lack of proof of any fraud, misrepresentation or unethical conduct on the part of the defendant. The evidence indicates that defendant was promoting ductile iron production long before the plaintiff was founded, and that it has continued to do so consistently for many years.

The court is convinced that by a change of name to embrace both gray and ductile iron in its title defendant is merely giving recognition to a fact which has been true for many years, namely that it is serving the interests of those concerned with both gray and ductile iron. This does not reflect upon or detract from the fine service being rendered by the plaintiff in the field of ductile iron, nor does it jeopardize plaintiff's right or opportunity to continue its own program without diminution.

The court has examined the case of *The National City Bank of Cleveland* v. *The National City Window Cleaning Co.* (1963), 174 Ohio St., 510, and is convinced that the facts there are readily distinguishable from those herein.

On the other hand a precedent for the court's decision is found in *United Electric Fixture and Supply Co.* v. *United Electric Supply Co.* (1956), 74 Ohio Law Abs., 76. The law is summarized in Syllabus 1:

"Where the evidence in an action seeking to enjoin defendant from doing business under its corporate name, United Electric Supply Co., fails to show that defendant changed its name with any calculation or intent to induce persons to deal with it in the belief they were dealing with the plaintiff, United Electric Fixture Supply Co., but was for the purpose of making defendant's corporate name descriptive of the business engaged in, and there was no direct evidence or reasonable inference of facts to establish either any financial loss or probability of fu-

ture damage resulting to plaintiff by defendant's use of such name, and the evidence further shows the actual confusion caused by defendant's use of such name to be trifling, the court will not enjoin the use of the name by the defendant.''

For the above reasons the court is satisfied that plaintiff is not entitled to the relief sought. The prayer for a permanent restraining order will be denied.